IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SUNRISE ORCHARDS, INC.,<br>　　　　　Plaintiff,<br><br>　　v.<br><br>PETS CALVERT CO. and MICHAEL F. O'NEILL,<br>　　　　　Defendants.<br>_____<br><br>BORZYNSKI BROS. DISTRIBUTING, INC.,<br>　　　　　Intervening Plaintiff,<br><br>　　v.<br><br>PETS CALVERT CO. and MICHAEL F. O'NEILL,<br>　　　　　Defendants. | Case No. 08-cv-6684<br><br>Judge Robert M. Dow, Jr. |

**MEMORANDUM OPINION AND ORDER**

On November 21, 2008, Plaintiff Sunrise Orchards, Inc. filed suit against Defendants Pets Calvert Co. and Michael F. O'Neill to enforce its rights pursuant to the Perishable Agricultural Commodities Act ("PACA") and to recover for common-law breach of contract. On December 18, 2008, Plaintiff Borzynski Bros. Distributing, Inc. intervened in this action, also to enforce its PACA rights. On June 3, 2009, Defendant O'Neill moved for partial summary judgment [56] against Sunrise and Borzynski, which corporate Defendant Pets Calvert Co. joined on August 3, 2009. Defendants seek to dismiss all PACA claims in the complaints filed by Sunrise and Borzynski. Also on August 3, 2009, Borzynski moved for summary judgment [72] against Defendants. For the following reasons, the Court grants Borzynski's motion for summary

1

judgment [72], and grants in part and denies in part Defendants' motion for partial summary judgment [56].

## I.  Background

### A.  Procedural History

On November 21, 2008, Plaintiff Sunrise Orchards, Inc. ("Sunrise") filed its complaint against Defendants Pets Calvert Co. and Michael F. O'Neill, alleging the following causes of action:  Failure to Maintain Trust (Count I), Dissipation of Trust Assets (Count II), Failure to Pay Trust Funds/Unfair Conduct (Count III), Breach of Fiduciary Duty/Non-Dischargeability (Count IV), and Breach of Contract (Count V).  On December 9, 2008, Borzynski Bros. Distributing, Inc. ("Borzynski") filed a motion to intervene, which the Court granted on December 12, 2008, and on December 18, 2008, Borzynski filed its complaint against Defendants Pets Calvert Co. and Michael F. O'Neill, alleging the following causes of action:  Declaratory Relief Validating PACA Trust Claim (Count I), Enforcement of Payment from PACA Trust Assets (Count II), Violation of PACA – Failure to Maintain PACA Trust Assets and Creation of Common Fund (Count III), Violation of PACA – Failure to Pay Promptly (Count IV), Breach of Contract (Coun V), Breach of Fiduciary Duty to PACA Trust Beneficiaries (Count VI), Conversion and Unlawful Retention of PACA Trust Assets (Count VII), and Constructive Trust (Count VIII).[1]

Defendants initially did not respond to Sunrise's complaint, and on January 22, 2009, the Court entered a default against both Defendants.  Sunrise then moved for default judgment, which the Court denied, and Defendants filed answers to both complaints.  At a status hearing on February 5, 2009, Defendant O'Neill, appearing *pro se*, acknowledged on the record that he owed a debt to Sunrise and that he had no dispute with the amount Sunrise claimed he owed.  Then, on June 3, 2009, Defendant O'Neill filed a motion for partial summary judgment on all

---
[1]  Borzynski's Constructive Trust count was inadvertently numbered as "Count IX."

PACA claims asserted by Sunrise and Borzynski, which Defendant Pets Calvert was permitted to join on August 3, 2009. Sunrise responded to Defendants' summary judgment motion, but Borzynski did not. However, on August 3, Borzynski moved for summary judgment against Defendant Pets Calvert on Counts IV and V. Sunrise has not moved for summary judgment.

In order to clarify issues raised by the summary judgment motions, the Court held a telephonic oral argument on February 16, 2010. During the argument, the Court specifically asked the parties to clarify the relationship between this litigation and prior litigation in the Western District of Wisconsin between Sunrise and Pets Calvert, to which the parties referred in their briefs. The Court also requested that the parties clarify the nature of the PACA claims at issue. After the oral argument, the Court allowed supplemental briefing.

**B.     Factual History**

*1.     Litigation between Sunrise Orchards and Defendants*

Plaintiff Sunrise, a Wisconsin corporation that grows, harvests, and sells fresh apples ("produce"), sold produce to Defendant Pets Calvert Co. between November 2004 and January 2007. Pets Calvert, an Illinois corporation solely owned by Defendant Michael O'Neill, is a licensed "dealer" of perishable agricultural commodities within the meaning of the Perishable Agricultural Commodities Act ("PACA"), 7 U.S.C. 499 *et seq*. Pets Calvert buys and resells fruits and vegetables. Between November 2004 and January 2007, Defendants ordered, received, and accepted $116,669.00 worth of fresh apples on credit. The principal amount of $89,169.00 remains unpaid.

As of October 31, 2005, there was principal in the amount of $83,668.00 and accrued interest in the amount of $12,843.42 owed by Pets Calvert to Sunrise, with interest continuing to accrue at 1.5% month. After Defendants failed to timely pay for the produce delivered by

3

Sunrise, Sunrise filed suit in the United States District Court for the Western District of Wisconsin, Case No. 3:05-cv-651-bbc ("Wisconsin lawsuit"). The lawsuit sought payment for fresh apples ordered, received, and accepted by Defendants from the period of November 19, 2004, through February 26, 2005. On December 21, 2005, an agreement to repay the debt was reached and memorialized by a stipulation filed in the Wisconsin lawsuit. Pursuant to the stipulation, Pets Calvert and O'Neill agreed to pay a principal amount of $83,668.00 and accrued interest of $12,843.42, plus attorneys fees and interest at 1.5% per month on the unpaid principal balance. The stipulation was approved by District Court Judge Barbara Crabb.

Defendants began making payments pursuant to the court order, but eventually stopped. On June 5, 2007, Sunrise filed a motion to reopen the Wisconsin litigation and for entry of judgment. On July 13, 2007, Judge Crabb entered judgment against Pets Calvert and O'Neill and in favor of Sunrise in the amount of $95,409.46, with interest at a rate of $41.26/day from June 2, 2007 through the date of judgment.[2]

Between October 2006 and January 2007, Sunrise continued to sell produce to Pets Calvert. According to the evidence submitted by the parties – which the parties confirmed during the February 16, 2010 oral argument – the remaining balance on the produce sold outside of the Wisconsin litigation that remains unpaid amounts to $33,001.00.

### 2. *Litigation between Borzynski Bros. and Defendants*

Intervenor Plaintiff Borzynski, a Wisconsin corporation, also supplied produce to Defendants. Between May 20 and June 17, 2008, Borzynski sold seven loads of produce, worth $19,563.00, to Defendants. Borzynski and Defendants negotiated the price for each shipment,

---

[2] Intervenor Plaintiff Borzynski was not a party to the Wisconsin lawsuit.

4

and Defendants accepted the produce delivered by Borzynski. The invoices provided for payment in ten days. Defendants failed to pay for the produce.

According to Defendants,[3] Borzynski and Defendants entered into an agreement in which Defendants would pay Borzynski $500/week for forty weeks to satisfy the outstanding debt. In an e-mail to Defendants on September 26, 2008, Borzynski stated, "Mike, Did you forget something? I think you are behind on our agreed upon schedule of $500/week. Let me know. (Nothing last week and nothing this week)." Despite this agreement extending the payment terms, Defendants failed to satisfy their debt to Borzynski.

## II.     Summary Judgment Standard

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether there is a genuine issue of fact, the Court "must construe the facts and draw all reasonable inferences in the light most favorable to the nonmoving party." *Foley v. City of Lafayette, Ind.,* 359 F.3d 925, 928 (7th Cir. 2004). To avoid summary judgment, the opposing party must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986) (internal quotation marks and citation omitted). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the

---

[3] Because Borzynski failed to submit responses to Defendants' statement of facts, the Court deems admitted Defendants' factual allegations that are properly supported by admissible record evidence. See *Malec v. Sanford,* 191 F.R.D. 581, 583 (N.D. Ill. 2000) ("Factual allegations not properly supported by citation to the record are nullities."). In turn, because Defendants failed to respond to several of Borzynski's statements of fact with admissible evidence, the Court deems admitted those factual allegations submitted by Borzynski that are properly supported by admissible record evidence. See *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986) (to avoid summary judgment, the opposing party must go *beyond the pleadings*).

5

nonmoving party." *Id.* at 248. The party seeking summary judgment has the burden of establishing the lack of any genuine issue of material fact. See *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Summary judgment is proper against "a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322. The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson,* 477 U.S. at 252.

## III. Analysis

### A. PACA Background

The Perishable Agricultural Commodities Act of 1930 imposes various duties on commercial buyers and sellers of produce. In addition to PACA's comprehensive regulatory scheme, the Act allows buyers and sellers to seek redress in the courts for certain statutory violations. See 7 U.S.C. §§ 499e(b)(2), (c)(5) (conferring jurisdiction for the alleged PACA violations in Plaintiff's complaint).

Two provisions are important for the instant motion and for this case. The first, 7 U.S.C. § 499b(4), pertains to prompt payment; it makes it unlawful for any dealer or broker "to fail or refuse truly and correctly to account and make full payment promptly" for a shipment of produce. The terms "dealer" and "broker" – the people who have a duty to make prompt

payment[4] – are defined broadly. A "dealer" basically is one who buys or sells produce. Under the Act, and subject to a handful of statutory exceptions, the term means "any person engaged in the business of buying or selling [in quantities defined by the Secretary of Agriculture] any perishable agricultural commodity in interstate * * * commerce." *Id.* at § 499a(b)(6). And a "broker" is basically an agent who buys produce. The term, likewise subject to limited exceptions, includes "any person engaged in the business of negotiating sales and purchases of any perishable agricultural commodity in interstate * * * commerce for or on behalf of the vendor or purchaser." *Id.* at § 499a(b)(7). A dealer or broker who fails to tender prompt payment "shall be liable to the person or persons injured thereby for the full amount of damages * * * sustained in consequence of such violation." *Id.* at 499e(a).

The second important provision is a statutory trust provision. In 1984, PACA was amended to create a statutory trust in favor of sellers in produce sold to buyers (*e.g.*, grocery stores and certain agents), under which the buyer holds the produce and any proceeds and receivables from the produce in trust for the benefit of the seller. 7 U.S.C. § 499e(c)(2). This floating trust is automatically created when the dealer accepts the goods so long as the supplier complies with the specific notice requirements set out in 7 U.S.C. § 499e(c) and 7 C.F.R. § 46.46(f).[5] *Greg Orchards & Produce, Inc. v. Roncone,* 180 F.3d 888, 890-91 (7th Cir. 1999). PACA trust rights take priority over the interests of all other creditors, including secured creditors. *C.H. Robinson Co. v. Trust Co. Bank, N.A.,* 952 F.2d 1311, 1315 (11th Cir. 1992). Thus, PACA gives sellers of perishable goods a superior secured interest, just as a seller of

---

[4] The Act also imposes duties on "commission merchants." A commission merchant is "any person engaged in the business of receiving in interstate * * * commerce any perishable agricultural commodity for sale, on commission, or for or on behalf of another." 7 U.S.C. § 499a(b)(5).

[5] That notice can take the form of "ordinary and usual billing or invoice statements" so long as the invoices recite statutorily required language. 7 U.S.C. § 499e(c)(4).

durable goods may perfect an interest in its property.

A trust beneficiary can initiate an action in federal court "to enforce payment from the trust." 7 U.S.C. § 499e(c)(5)(i). This remedy permits recovery against both the corporation and its controlling officers. *Golman-Hayden Co. v. Fresh Source Produce, Inc.,* 217 F.3d 348, 351 (5th Cir. 2000). The principal justifications Congress has given for granting such generous protection for sellers of produce are (1) the need to protect small dealers who require prompt payment to survive and (2) the importance of ensuring the financial stability of the entire produce industry. *In re Magic Rests., Inc.,* 205 F.3d 108, 111 (3d Cir. 2000). In return for its protections, PACA establishes strict eligibility requirements. A PACA supplier must be selling produce on a cash or short-term credit basis. *Greg Orchards,* 180 F.3d at 891. The Secretary of Agriculture has determined that "the maximum time for payment for a shipment to which [parties] can agree and still qualify for coverage under the trust is 30 days after receipt and acceptance." 7 C.F.R. § 46.46(e)(2). If a produce supplier enters a written post-default agreement with a dealer that extends the dealer's time for payment beyond thirty days, the supplier becomes ineligible to assert its trust rights. See *Patterson Frozen Foods, Inc. v. Crown Foods Intern., Inc.*, 307 F.3d 666, 669-70 (7th Cir. 2002); *Greg Orchards,* 180 F.3d at 892; *In re Lombardo Fruit and Produce Co.,* 12 F.3d 806, 809 (8th Cir.1993). On the other hand, an oral agreement for an extension or a course of dealing allowing more than thirty days for payment will not abrogate a PACA trust. See *Patterson*, 307 F.3d at 670.

    **B.**    **Litigation between Sunrise Orchards and Defendants**

        *1.*    *Res Judicata*

Under the doctrine of *res judicata* (or claim preclusion), a final judgment on the merits in a case precludes the parties from relitigating claims that were or could have been raised in that

case. See *Highway J Citizens Group v. U.S. Dep't of Transp.*, 456 F.3d 734, 741 (7th Cir. 2006). For claim preclusion to apply, there must be (i) a final judgment on the merits in an earlier action; (ii) an identity of the causes of action in the earlier and later action; and (iii) an identity of the parties. See, *e.g.*, *Highway J* at 741; *Doe v. Allied-Signal, Inc.*, 985 F.3d 908, 913 (7th Cir. 1993). In the present case, there was a final judgment entered by Judge Crabb in the Wisconsin lawsuit on July 13, 2007, and the parties to this suit and the Wisconsin lawsuit (other than Intervenor Plaintiff Borzynski, whose claims are separate from Plaintiff Sunrise's claims) are the same.

An identity of causes of action occurs if a later claim "emerges from the same core of operative facts as [the] earlier action." *Highway J*, 456 F.3d at 741. Claims are considered the same for purposes of claim preclusion if they are "based on the same, or nearly the same, factual allegations." *Cole v. Bd. of Trustees of Univ. of Ill.*, 497 F.3d 770, 772-73 (7th Cir. 2007) (internal quotation marks and citation omitted). In other words, "a subsequent suit is barred if the claim on which it is based arises from the same incident, events, transaction, circumstances, or other factual nebula as a prior suit that had gone to final judgment." *Okoro v. Bohman*, 164 F.3d 1059, 1062 (7th Cir. 1999).

The judgment entered by Judge Crabb in the Wisconsin lawsuit in the principal amount of $83,668.00 cannot be collaterally attacked in this lawsuit. The factual predicate for the portion of Sunrise's claims in this lawsuit that are related to the $83,668.00 due on the unpaid produce delivered to Defendants between November 19, 2004, and February 26, 2005, is identical to the factual allegations in the Wisconsin lawsuit. See *Cole*, 497 F.3d at 772. Indeed, during the telephonic conference on February 16, the parties conceded this point. Thus, any claims that Sunrise has with respect to this amount, as well as any defenses asserted by

Defendants, are barred by *res judicata*. However, the produce sold outside of the Wisconsin litigation that remains unpaid, which totals $33,001.00, is not subject to claim preclusion and is properly before this Court for consideration.

Defendants contend for the first time in their surreply that Plaintiff's entire claim in this case, including the $33,001.00, should be barred by *res judicata*. Defendants rely on *In Car Carriers, Inc. v. Ford Motor Co.*, 789 F.2d 589, 593 (7th Cir. 1986), in support of their position that Plaintiff should have incorporated into the Wisconsin case the produce sold (and not paid for) between October 2006 and January 2007. In *Car Carriers*, the Seventh Circuit upheld a district court's dismissal on *res judicata* grounds of a complaint filed in 1983 that was based on different theories, but the same transactions, as a complaint filed in 1982.

*Car Carriers* is readily distinguishable from this case. In *Car Carriers*, the additional claims were based on facts which were "admittedly in existence prior to the 1982 complaint," although unknown to the parties until after judgment on that complaint. In the present case, not only were the 2006 and 2007 invoices not in existence when Sunrise filed its complaint in the Wisconsin litigation in November 2005, the 2006 and 2007 invoices were not in existence when the court-approved settlement was entered into in December 2005. Because the unpaid sales transactions encompassed in the 2006 and 2007 invoices accrued subsequent to (i) the filing of the complaint, (ii) the settlement agreement between the parties, and (iii) the court order approving the settlement agreement, those claims did not "emerge[] from the same core of operative facts as [the] earlier action." *Highway J*, 456 F.3d at 741. Furthermore, the July 2007 judgment entered by Judge Crabb was premised entirely on Defendants' breach of the court-approved settlement, which did not encompass the unpaid sales transaction from 2006 and 2007.[6]

---

[6] Plaintiff was not required to seek leave of court, after a settlement had already been reached and the case dismissed, to amend its complaint to include these new unpaid transactions from 2006 and 2007.

Thus, the prior litigation – which ended first in settlement between the parties and was reopened only because Defendants did not honor that settlement – will not act as a bar on the $33,001.00 at issue in this litigation because claims over that amount were not, and did not need to be, raised in the Wisconsin litigation. See, *e.g.*, *Ross v. International Bd. of Elec. Workers*, 634 F.2d 453, 458-59 (9th Cir. 1980) ("*res judicata* should not be applied so rigidly as to defeat the ends of justice").

      2.     *Merits*

The principal dispute remaining between Sunrise Orchards and Defendants is not whether Defendants owe the money to Sunrise; indeed, Defendant O'Neill acknowledged on the record in court both the existence of the debt to Sunrise and the amount owed. Instead, the issue is whether the post-default dealings between the parties nullified Sunrise's PACA trust rights. If Sunrise and Pets Calvert entered into a written post-default agreement giving Pets Calvert more than thirty days to pay for the produce, there is no enforceable PACA trust. See *Patterson*, 307 F.3d at 669-70. If that were the case, Defendant O'Neill would not be subject to any fiduciary duty derived from PACA (which is the only source of such a duty alleged here). On the other hand, if the parties had no agreement to extend the time for payment, or if any such agreement was merely oral, then PACA remains in force and O'Neill can be personally liable for any breach committed by Pets Calvert.

As set forth above, the only unpaid sales transactions at issue between Sunrise and Defendants concern the produce sold outside of the Wisconsin litigation, between October 2006 and January 2007, which amounts to $33,001.00. Thus, the Court need not consider Defendants' argument that the Wisconsin court settlement – in which Plaintiff and Defendants entered into an agreement by which Defendants would pay $500/week for fifty-two weeks to satisfy the

outstanding balance from the 2004 and 2005 sales – removed the claims in the Wisconsin litigation from PACA trust protection.

After the settlement was reached, Sunrise continued selling produce to Defendants. And again, Defendants did not pay. Between October 13, 2006 and January 11, 2007, Plaintiff sent produce and eight invoices to Defendants. Those invoices obviously did not exist at the time of the December 2005 settlement, and Defendants have not presented any evidence that the new invoices were subject to the $500/week payment plan. Defendants contend that the new invoices were subject to a "Second Agreement" in which Defendants "agreed to re-amortize this new PACA debt into another obligation for weekly $500 payments to Sunrise." Def. Reply at 10. According to Defendants, this "$500/week payment was now extended to cover not just the first [eleven] invoices, but also the new eight invoices that arose after the date of the First Agreement." *Id*.

The problem with Defendants argument is that they have not presented a shred of evidence demonstrating the existence of a new "Second Agreement" between the parties. Plaintiff readily admitted that an agreement was reached, within the context of the Wisconsin litigation, for repayment of the debt owed to Plaintiff through 2005. Of course, Plaintiff disputes the effect of that agreement, but that issue is no longer before this Court. The only issue before this Court is whether the remaining $33,001.00 is subject to a PACA trust. The e-mails to which Defendants point in support of their position – sent on January 22, 2007 and June 26, 2007 – merely reiterate, as with the many other e-mails that Sunrise sent to Defendant O'Neill, that Defendants were behind on their $500/week payments that they promised to make in the court-approved settlement. None of those e-mails suggests that a new "Second Agreement" was negotiated.

Defendants have failed to meet their burden at summary judgment to point to any post-default dealings between the parties that nullified Sunrise's PACA trust rights. Thus, Defendants' motion for summary judgment as to Sunrise's claims is denied and all of Sunrise's claims with respect to the $33,001.00 at issue in this lawsuit, including its PACA trust claims, remain pending.

### C. Litigation between Borzynski and Defendants

#### 1. *Jurisdiction*

Defendants do not contest, with admissible evidence, that Borzynski sold seven loads of produce to Pets Calvert totaling $19,563.00. Nor do Defendants contest, with admissible evidence, that Pets Calvert failed to pay for the produce that it received from Borzynski. However, rather than paying this undisputed debt, Defendants challenge the Court's jurisdiction to render a judgment in favor of Borzynski on the non-PACA trust claims (Count IV and V). Defendants assert that the PACA trust claims (Counts I-III, VI-VII, and IX) served as the "real" basis for this Court's jurisdiction and that the non-PACA trust claims are only before this Court pursuant to supplemental jurisdiction.

Even if the Court granted summary judgment as to all the PACA claims over which it has original jurisdiction (see 28 U.S.C. § 1367(c)(3)) – including Count IV, which states a non-trust PACA claim and alleges that Pets Calvert violated the "prompt payment" provision of § 499b(4) – the Court still may retain jurisdiction over Borzynski's state law contract claim. Although "it is the well-established law of this circuit that the usual practice is to dismiss without prejudice state supplemental claims whenever all federal claims have been dismissed prior to trial," (see *Groce v. Eli Lilly & Co.,* 193 F.3d 496, 501 (7th Cir.1999)), the Seventh Circuit has recognized that there occasionally are "cases in which the balance of factors to be considered under the

pendent jurisdiction doctrine – judicial economy, convenience, fairness, and comity – will point to a federal decision of the state-law claims on the merits." *Wright v. Associated Ins. Cos.,* 29 F.3d 1244, 1251-53 (7th Cir. 1994).

Departure from the usual practice is appropriate here. The Court has devoted substantial judicial resources to learning the record in this case, and the state law breach of contract claim is straightforward and largely uncontested. Defendants have engaged in various tactics to delay a decision on the merits in this case – first by ignoring service of process, then failing to appear as ordered, then by insisting on proceeding *pro se* and shortly thereafter hiring and firing counsel. Eventually, the Court was forced to impose this circuit's policy of "graduated sanctions for recalcitrant defendants" in order to advance this case along. Simply put, Defendants' tactics have served to delay this case, waste judicial resources, and add to Defendants' own indebtedness through the accrual of additional contractual interest. Therefore, even if all of Borzynski's PACA claims – including the non-trust claim – were dismissed, considerations of judicial economy, convenience, and fairness to the parties all counsel in favor of resolving the merits of Count V at this time. See also *Chicago United Industries, Ltd. v. City of Chicago*, 2010 WL 234994, at *30 (N.D. Ill. Jan. 15, 2010).

Additionally, Count IV of Borzynski's complaint alleges that Pets Calvert violated the prompt payment section of § 499b(4). See, *e.g.*, *Baiardi Food Chain v. United States*, 482 F.3d 238, 243-44 (3d Cir. 2007) (discussing whether a merchant has satisfied its obligation under § 499b(4) to "make full payment promptly" even if a creditor agrees to accept partial or deferred payment as a settlement). Count IV therefore arises under federal law (see 7 U.S.C. § 499b(4)) and presents a federal question. Defendants did not move for summary judgment on Count IV,

but Borzynski did. Defendants only moved for summary judgment on PACA trust claims.[7] Thus, this Court has federal question jurisdiction over Borzynski's claim under § 499b(4) and supplemental jurisdiction over Borzynski's breach of contract claim. See 28 U.S.C. § 1367(a).

2. *Merits*

Defendants have not produced any evidence that Pets Calvert paid the money that it owes Borzynski, promptly or otherwise. Instead, they argue that the invoices were superseded by a subsequent agreement that allowed Pets Calvert to pay the outstanding balance with weekly payments. When Pets Calvert failed to make the promised payments, Defendants insist that Borzynski's only recourse was to enforce the subsequent agreement, not the invoices at issue. Notably, Defendants do not include a single citation to legal authority in their response to Borzynski's motion for summary judgment. Additionally, Defendants' argument confuses the remedy for failure to "make full payment promptly" under 7 U.S.C. § 499b(4) with the trust protection afforded under 7 U.S.C. § 499e(c).

Defendants point to an e-mail allegedly extending the original payment terms on the invoices as evidence that Borzynski voided its PACA trust rights. Assuming that the e-mail did extend the payment terms on the invoices, that fact only would undermine Borzynski's PACA trust claims against Defendants. As set forth earlier, this Circuit has found that if a produce supplier enters into a post-default agreement with a dealer that extends the time for payment beyond thirty days, the supplier becomes ineligible to assert its PACA trust rights. See *Patterson Frozen Foods, Inc. v. Crown Foods Intern., Inc.*, 307 F.3d 666, 669-70 (7th Cir. 2002).

---

[7] Borzynski has abandoned the following PACA trust claims: Declaratory Relief Validating PACA Trust Claim (Count I), Enforcement of Payment from PACA Trust Assets (Count II), Violation of PACA – Failure to Maintain PACA Trust Assets and Creation of Common Fund (Count III), Breach of Fiduciary Duty to PACA Trust Beneficiaries (Count VI), Conversion and Unlawful Retention of PACA Trust Assets (Count VII), and Constructive Trust (Count VIII). Thus, summary judgment is appropriate for Defendants with respect to these claims.

However, Borzynski is not attempting to enforce its PACA trust claims against Defendants.[8] Rather, Borzynski seeks a judgment against Pets Calvert for its failure to tender prompt payment under § 499b(4). The e-mails that Defendants submitted as evidence of a post-default agreement do not aid Defendants on Count IV.

Actions to enforce payment from a PACA trust (Section 499e(c)(5)(i)) and for failure to pay promptly (Sections 499b(4) and 499e(a)) are purely statutory creatures, and Plaintiff need not look outside the four-corners of the statute in its prayer for relief.[9] With respect to Count IV (Failure to Pay Promptly), Section 499b(4) of Title VII of the United States Code makes it unlawful for any "dealer[] or broker" * * * to fail or refuse * * * [to] make full payment promptly" in connection with a produce transaction under PACA. And Section 499e(a) states that brokers or dealers who violate Section 499b "shall be liable to the person or persons injured thereby for the full amount of damages * * * sustained in consequence of such violation." Payment terms under PACA are set forth in the regulations promulgated by the Secretary of the U.S. Department of Agriculture ("Secretary"). 7 C.F.R. § 46.1 *et seq*. The term "full payment promptly" is used to identify the period of time during which payment must be made by the buyer. 7 C.F.R. § 46.2(aa) defines these payment terms as:

(5)   Payment for produce by a buyer, within 10 days after the day on which the produce is accepted,

---

[8] Several circuits have held that the PACA statutory trust provision allows a plaintiff to recover against both a corporation and its controlling officers for breach of fiduciary duty. See, *e.g.*, *Weis-Buy Svcs., Inc. v. Paglia*, 411 F.3d 415, 421-22 (3d Cir. 2005); *Golman-Hayden Co., Inc. v. Fresh Source Produce*, 217 F.3d 348, 351 (5th Cir. 2000). The Seventh Circuit has likewise indicated, albeit in dicta, that such an action may be maintained. *Patterson Frozen Foods, Inc. v. Crown Foods Int'l, Inc.*, 307 F.3d 666, 669 (7th Cir. 2002) (citing *Golman-Hayden*, 217 F.3d at 351). In the present action, as indicated in the previous footnote, Borzynski has abandoned its fiduciary claims against Defendant O'Neill.

[9] Where Congress has explicitly created a cause of action, the task of courts is limited. See *United States v. Morrison*, 529 U.S. 598, 607 (2000) (invalidating a congressionally-created cause of action but "only upon a plain showing that Congress * * * exceeded its constitutional bounds").

> (11) Parties who elect to use different times of payment * * * must reduce their agreement to writing before entering into the transaction and maintain a copy of the agreement in their records. If they have so agreed, then payment within the agreed upon time shall constitute "full payment promptly," provided, that the party claiming the existence of such an agreement for time of payment shall have the burden of proving it.

Based upon this regulatory scheme, payment is due within ten days after delivery, unless different terms have been agreed to in writing by the parties before the transaction. In this case, any agreement extending the time for payment came after the produce already had been delivered. Therefore, 7 C.F.R. § 46.2(aa)(11) does not apply and the invoices and the ten-day payment period specified therein control.

Defendants (i) fall within the definition of a dealer or broker, (ii) received produce from Borzynski, and (iii) failed to pay Borzynski, despite repeated requests, in violation of the parties' agreement. Therefore, Defendants failed or "refuse[d] * * * [to] make full payment promptly" in connection with a produce transaction under PACA, and Defendant Pets Calvert is liable to Borzynski for the "full amount of damages * * * sustained in consequence of such violation."[10] The Court will not allow Defendants to "utilize [their] breach as a shield against an action on the underlying claim." See *F.C. Bloxom Co. v. Rojo Produce Import and Export, LLC*, 2006 WL 2021697, at *3 (D. Or. July 16, 2006) (refusing to allow defendant, who settled a claim under

---

[10] The parties have not presented, nor has the Court discovered, any cases in which a court has determined that a produce supplier loses all PACA rights, in addition to PACA *trust* rights, when it enters into a post-default agreement with a dealer that extends the time for payment beyond thirty days. However, the cases that the Court has found addressing the failure-to-promptly-pay provision (once trust rights have been lost) primarily have dealt with the Secretary of Agriculture's enforcement of this provision. See, *e.g.*, *Baiardi Food Chain v. U.S.*, 482 F.3d 238, (3d Cir. 2007) (holding that post-default agreements between company and its suppliers did not bar the Secretary's enforcement of PACA); *Finer Food Sales Co., Inc. v. Block*, 708 F.2d 774, 782 (D.C. Cir. 1983) ("Such a belated payment of a small portion of a licensee's obligation does not constitute the making of the 'full payment promptly' that section 2(4) requires"); *Marvin Tragash Co., Inc. v. United States Dep't of Agriculture*, 524 F.2d 1255, 1258 (5th Cir. 1975) ("This partial payment under the plan entered into some months after the purchases cannot be characterized as either full or prompt payment as required by the Act * * * *"). As set forth below, because the Court finds in the alternative that Defendant Pets Calvert breached its contract with Borzynski, Borzynski is entitled to the full amount of damages requested under both federal (PACA) and state law.

PACA based on a settlement agreement but then defaulted on the settlement agreement, to use its breach as a shield against liability on the original claim).

Finally, even if this transaction – as with the PACA trust claims – fell out of PACA entirely by virtue of Borzynski agreeing to an extended payment plan, Borzynski also has sued Defendants for breach of contract. In order to establish a cause of action for breach of contract under Illinois law, a plaintiff must prove "(1) the existence of a valid and enforceable contract; (2) performance by the plaintiff; (3) breach of contract by the defendant; and (4) resultant injury to the plaintiff." *Henderson-Smith & Assocs. v. Nahamani Family Serv. Ctr., Inc.*, 752 N.E.2d 33, 43 (Ill. App. Ct. 2001). Between May 20 and June 17, 2008, Borzynski sold seven loads of produce, worth $19,563.00, to Defendants. Borzynski and Defendants negotiated the price for each shipment, and Defendants accepted the produce delivered by Borzynski. The invoices identified the commodity sold, the quantity, the price, the date of the sale, and the payment terms. Defendants did not object to any of the invoice terms, and Defendants then failed to pay for the produce. In responding to Borzynski's motion for summary judgment, Defendants do not argue that Pets Calvert did not breach its contract with Borzynski; rather, they limit their arguments to the PACA trust claims and supplemental jurisdiction. The breach of contract claim is not a PACA trust claim, and the Court already has determined that it has jurisdiction to decide the state law claim. Borzynski has demonstrated that Pets Calvert breached its agreement to pay for the produce delivered by Borzynski and accepted by Pets Calvert. Accordingly, summary judgment is granted in favor of Borzynski and against Defendant Pets Calvert on Counts IV and V of Borzynski's Intervenor Complaint. Borzynski's PACA trust claims (Counts I-III, VI-VII, and IX) are dismissed.

### *3. Pre-judgment interest*

The final issue before the Court is pre-judgment interest, which Borzynski has requested and Defendants have not addressed. In cases involving breach of contract, prejudgment interest can be awarded if the damages are "fixed or easily computed" prior to judgment. See 815 ILCS 205/2; *Medcom Holding Co. v. Baxter Travenol Laboratories*, 200 F.3d 518, 519 (7th Cir. 1999). In this case, the damages ($19,563.00) are "easily ascertainable." Therefore, the Court awards prejudgment interest at the rate of five percent per annum. See 815 ILCS 205/2.

## III. Conclusion

For these reasons, the Court denies Defendants' motion for partial summary judgment [56] as to Plaintiff Sunrise and grants Defendants' motion for partial summary judgment [56] as to Intervenor Plaintiff Borzynski on the PACA trust claims. Plaintiff Sunrise's claims against Defendants remain pending. The Court grants Intervenor Plaintiff Borzynski's motion for summary judgment [72] on the remaining PACA claim (Count IV) and on the state law breach of contract claim (Count V). Judgment is entered in favor of Intervenor Plaintiff Borzynski and against Defendant Pets Calvert on Counts IV and V in the amount of $19,563.00 plus pre-judgment interest at a rate of 5% per annum. Borzynski's remaining claims are dismissed.

Dated: March 23, 2010

_____
Robert M. Dow, Jr.
United States District Judge